United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2004

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 03-50134

VICTOR H. MORENO, III, Individually and On Behalf of Others
Similarly Situated; ANA LAURA MORENO,
Individually and On Behalf of Others Similarly Situated,

Plaintiffs-Appellants,

versus

SUMMIT MORTGAGE CORPORATION; FIRST NATIONWIDE MORTGAGE
CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Victor and Ana Moreno appeal the summary judgment granted Summit Mortgage Corporation and First Nationwide Mortgage Corporation. Summit originated a mortgage loan to the Morenos and sold it to First Nationwide. At issue is whether the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. (RESPA), governs that sale. Because it was a bona fide secondary market transaction, the sale was not covered by RESPA. **AFFIRMED**.

A summary judgment's being at issue, the record is viewed in the light most favorable to the Morenos — the nonmovants. Summit originated residential mortgage loans. In so doing, it accepted applications from potential borrowers, evaluated them and their security for the loans, produced documentation to evidence and perfect the loans, and provided funds for the loans if approved. Summit did not retain ownership of the loans it originated. Instead, it sold them to an investor, here First Nationwide. Summit arranged the sales prior to closing the mortgage loans.

Summit and First Nationwide entered into an agreement which governed the potential sale of mortgage loans from Summit to First Nationwide. Under it, if Summit wanted to sell a prospective loan to First Nationwide, it first submitted a request to First Nationwide to commit to purchase the loan. If Summit and First Nationwide agreed on a purchase price, First Nationwide issued a commitment confirmation. Prior to issuance of the commitment, Summit was *not* obligated to sell, or even offer, its mortgage loans to First Nationwide. Once the commitment issued, however, Summit had to use its best efforts to close the loan and had to tender it for purchase by First Nationwide. Even then, First Nationwide was *not* required to purchase the loan; it could reject it for failure to meet the requirements set forth in its "Lender Guide". After a

mortgage loan closed, Summit delivered the loan file to First Nationwide for it to make its purchase decision.

For the loans it originated, Summit borrowed the money to fund them from its warehouse lender, Bank United, pursuant to an agreement. Under it, Bank United agreed to fund "Eligible Mortgage Loans". Only prospective loans with a purchase commitment from a third party (*e.g.*, a commitment confirmation from First Nationwide) were "eligible" loans. Restated, Bank United would fund only those loans already committed for purchase by a third party from Summit.

In early 2001, the Morenos applied to Summit for a federally insured mortgage loan of $63,500, with an eight percent interest rate, for the purchase of a home in Texas. In turn, Summit submitted a purchase request to First Nationwide for the Morenos' loan; and on 14 March, First Nationwide executed a commitment confirmation to purchase the mortgage loan if it closed. Upon receipt of the commitment, Summit requested funds from Bank United to fund the loan. On 19 March, Summit delivered a copy of First Nationwide's commitment confirmation to Bank United. Around this same time, Bank United delivered to Summit the funds needed for the mortgage loan. Upon receipt of the funds from Bank United, Summit was obligated to repay the amount of the mortgage loan ($63,500) with interest (total of $64,452).

On either 19 or 20 March 2001 (the exact date is not relevant), the Morenos and Summit closed the mortgage loan. At

closing, the Morenos signed a promissory note with Summit as the payor and a deed with Summit as the beneficiary; they also signed a letter instructing them to send all tax notices received to First Nationwide.

On 19 March, Summit assigned the loan to First Nationwide. And, on 10 April 2001, to pay for its purchase of the mortgage loan, First Nationwide wired funds to Summit. By letter that same day, First Nationwide advised the Morenos of its purchase and that it would be servicing their loan.

The Morenos filed this action in Texas state court, claiming, *inter alia*, Summit and First Nationwide violated Section 8 of RESPA, 12 U.S.C. § 2607; this is based on the allegation that First Nationwide paid Summit a "yield spread premium" as a referral fee to acquire the Morenos' mortgage loan. The action was removed to federal court, and all but the RESPA claim was eliminated by the Morenos. Summary judgment was granted against them because Summit's sale of the loan to First Nationwide was a "bona fide secondary market transaction" not governed by RESPA.

## II.

A summary judgment is reviewed *de novo*, applying the same standard as the district court. ***Gowesky v. Singing River Hosp. Systems***, 321 F.3d 503, 507 (5th Cir. 2003). As noted, the record is viewed in the light most favorable to the nonmovant; accordingly, doubts are to be resolved and reasonable inferences

4

drawn in favor of the nonmovant. *Id*. Summary judgment is appropriate if there is no material fact issue and the movant is entitled to judgment as a matter of law. *Id*.; FED. R. CIV. P. 56(c).

RESPA was enacted to protect consumers from unnecessarily high settlement charges and abusive mortgage practices. 12 U.S.C. § 2601. Section 8 of RESPA prohibits kickback and referral fee arrangements whereby any payment is made, or "thing of value" is furnished, for the referral of real estate services. 12 U.S.C. § 2607(a). Section 8 does not proscribe, however, "the payment to any person of a bona fide salary or compensation or other payment for ... services actually performed". 12 U.S.C. § 2607(c)(2).

The Department of Housing and Urban Development (HUD), which administers RESPA, has promulgated regulations for doing so, including 24 C.F.R. § 3500.1 *et seq.*, commonly known as Regulation X. That regulation provides: "A bona fide transfer of a loan obligation in the secondary market is not covered by RESPA". 25 C.F.R. § 3500.5(b)(7). In determining what constitutes a bona fide transfer, HUD considers the "real source of funding and the real interest of the funding lender". *Id*. In contrast, a "table-funded" transaction is a closing "at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds" and is covered by RESPA. 24 C.F.R. § 3500.2(b). "A table-funded transaction is not a secondary market transaction". *Id*.

5

The Morenos contend the transaction is not a bona fide secondary market transaction because: prior to their loan's closing, Summit and First Nationwide were committed to First Nationwide's purchasing the Morenos' loan from Summit; "bona fide" is defined in the dictionary as "open and honest", whereas the sale to First Nationwide was deceitful because the Morenos were not informed of it; and Summit's financing of the loan was only interim and therefore it was not the real source of funds.

This issue was addressed by a divided panel in ***Chandler v. Northwest Bank Minn., Nat'l Ass'n.***, 137 F.3d 1053 (8th Cir. 1998). There, plaintiffs executed a mortgage loan with Custom Mortgage; it obtained the money to fund the loan through a warehouse lender. ***Id***. at 1054-55. Prior to closing, plaintiffs signed papers informing them that the right to payment under the loan was being assigned. ***Id***. at 1054. Five days after closing, a third party, Equicon, purchased the loan from Custom in accordance with a pre-existing agreement. ***Id***. The Eighth Circuit held that Custom Mortgage was the real source of funding because the loan was not table funded and Custom closed the loan in its own name. ***Id***. at 1056-57. Although that court did not explicitly hold the mortgage sale was a bona fide secondary market transaction under Regulation X, this is implied by its holding RESPA did not apply because Custom was the real source of funding.

We agree with the reasoning of the Eighth Circuit.  The sale of the Morenos' mortgage loan by Summit to First Nationwide was a bona fide secondary market transaction under Regulation X.  Summit borrowed the money to fund the Morenos' mortgage loan through its established line of credit with Bank United, not First Nationwide; and Summit closed the loan in its name.  Summit was the only party responsible for repaying Bank United and was therefore the real source of funds for the mortgage loan.  Moreover, the agreement between Summit and First Nationwide for the latter's purchase of the mortgage loan — even if it occurred before closing — has no bearing on Summit's status as the real source of funds and having the real interest in the transaction, consistent with Regulation X.  First Nationwide was not obligated to Bank United to pay the money borrowed by Summit; instead it was obligated to pay Summit the purchase price of the loan, as agreed upon between First Nationwide and Summit.

This is reflected by an example in the Appendix to Regulation X; the Appendix provides illustrations of RESPA's requirements for "additional guidance on [its] meaning and coverage".  24 C.F.R. § 3500, App. B. Of course, "[c]ourts are required to 'give substantial deference to an agency's interpretation of its own regulations'".  *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996) (quoting *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994)).

7

The facts for illustration 5 are:

> A, a "mortgage originator," receives loan applications, funds the loan with its own money *or with a wholesale line of credit for which A is liable*, and closes the loans in A's own name. Subsequently, B, a mortgage lender, purchases the loans and compensates A for the value of the loans, as well as for any mortgage servicing rights.

24 C.F.R. § 3500, App. B, Ill. 5. (emphasis added). The comments to this illustration confirm that "[c]ompensation for the sale of a mortgage loan and servicing rights constitutes a secondary market transaction ... and is beyond the scope of Section 8 of RESPA". *Id.*

The factual scenario at issue comports with this illustration: Summit is the "mortgage originator" that funded the Morenos' loan through its wholesale line of credit; First Nationwide is the "mortgage lender" that purchased the loan from Summit. The sale by Summit to First Nationwide is not governed by RESPA.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

8