United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 5, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 05-30824
Summary Calendar

———————————————

STEVEN M. SUTER,

Plaintiff-Appellant,

versus

LOUISIANA PHILHARMONIC ORCHESTRA; AFM LOCAL 174-496;
AMERICAN FEDERATION OF MUSICIANS UNITED STATES AND CANADA,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
(No. 2:05-CV-600)

———————————————

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In an employee's suit against his employer and union, the district court granted dispositive

motions and dismissed the case. For the reasons that follow, we affirm.

## I. FACTS AND PROCEEDINGS

Steven Suter, a professional musician, was employed by and a member of the Louisiana

Philharmonic Orchestra ("LPO"). The LPO was organized in 1992 as a nonprofit membership

———————————————

[*]Pursuant to 5th CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

corporation that is comprised of musicians as members.[1]  Suter began working for LPO at its

inception and was discharged in March 2004.  At all relevant times, Suter was a member in good

standing of Local 174-496 (the "Local") of the American Federation of Musicians (the "AFM").  In

the years following its inception, the LPO has entered into a series of collective bargaining

agreements ("CBA") with the Local.  And while the CBAs address certain aspects of the employment

relationship between the musicians and the LPO, musicians also enter into personal services contracts

with the LPO.  The personal services contracts are based on the LPO Operating Rules.

The CBA at issue for the purposes of this appeal was executed in September 2003.  The CBA

provides that the Local is "the sole collective bargaining agent for AFM members who may be

employed with respect to wages, hours, benefits, and terms and conditions of employment."

Moreover, the CBA expressly incorporates the bylaws of the Local and the AFM into the CBA.[2]  The

CBA does not incorporate the LPO Operating Rules.

After he was fired, Suter challenged the LPO's decision to discharge him by filing a grievance

with the Local against the LPO and some of the LPO's members.[3]  Initially, the Local began hearing

Suter's grievance in an arbitration.  After the Local initially determined that it had jurisdiction to hear

Suter's grievance, the AFM's International Executive Board determined that the Local did not have

jurisdiction.  Thereafter, the AFM ordered the Local to cease hearing Suter's grievances.

---

[1]Before the LPO was created, the musicians were employed by the New Orleans Philharmonic Symphony Society and represented by the same union as present.

[2]The CBA provides:  "Neither the employer nor its agents shall enforce any rule or regulation at variance with the laws of the Local and/or the Federation and said laws are hereby made part of this agreement."

[3]Suter also initiated suit in state court bringing claims related to his discharge, which is currently pending.

After the Local refused to hear his grievance, Suter filed a three-count complaint in federal court. The first count is a state-law claim against the LPO for wrongful discharge. The second count is a claim against the LPO for a breach of the CBA. The third count is a claim against the Local and the AFM for a breach of the duty of fair representation. According to Suter, the CBA incorporated grievance and arbitration provisions from the bylaws of the Local and the AFM. Because the LPO resisted arbitration, Suter maintains that the LPO failed to adhere to its obligations under the CBA. The AFM's order to the Local to cease the arbitration, Suter contends, constituted a violation of its duty of fair representation. LPO moved the district court for summary judgment; the Local and the AFM moved to dismiss.

The district court determined that the viability of Suter's claims depended upon the existence of grievance and arbitration provisions in the CBA. Finding that the CBA contained no such provisions, the district court granted the motion for summary judgment in favor of the LPO on the second count. The Local and the AFM argued to the district court that they did not have a duty of fair representation because they were not Suter's exclusive bargaining agent for the purposes of issues related to his termination. The district court agreed and, noting that Suter's third claim also depended on a finding that the LPO breached the CBA, granted the motion to dismiss the third count against the Local and the AFM. Having dispensed with the two federal claims, the district court declined to exercise supplemental jurisdiction over the state-law claim. With all parties raising essentially the same arguments presented to the district court, Suter now appeals.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citing *Ford Motor Co. v. Tex. Dep't of*

*Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citing *Boston Old Colony Ins. Co. v. Tiner Assocs., Inc.*, 288 F.3d 222, 227 (5th Cir. 2002)). In our review of a summary judgment, we apply the same standard as the district court. *Cooper Tire*, 423 F.3d at 454. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. *Id.* (quoting FED. R. CIV. P. 56(c)).

A court considering a motion for summary judgment must view evidence and inferences in the light most favorable to the nonmovant. *Bryan*, 375 F.3d at 360. *See also Moreno v. Summit Mortgage Corp.*, 364 F.3d 574, 576 (5th Cir. 2004). The movant has the initial burden to demonstrate "an absence of evidence to support the nonmoving party's case." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the movant meets this burden, "a nonmovant must bring forward sufficient evidence to demonstrate that a genuine issue of material fact exists for every element of a claim." *Id.* (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1196 (5th Cir. 1986)). Summary judgment is appropriate if the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. *See also Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003).

This court conducts a de novo review of a district court's order granting a motion to dismiss under FED. R. CIV. P. 12(b)(6). *Chiras v. Miller*, 432 F.3d 606, 610 (5th Cir. 2005) (citing *S. Christian Leadership Conference v. Supreme Ct. of La.*, 252 F.3d 781, 786 (5th Cir. 2001)). In this review, the court treats all facts pleaded as true and construes the pleadings in the manner most favorable to the non-moving party. *Id.* at 611. The court will affirm the district court's order if there

are no specific facts on which the non-movant may prevail. *Id.* The non-movant "must plead specific facts, rather than conclusory allegations" to avoid dismissal. *Id.* (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

### III. DISCUSSION

#### A.     The hybrid § 301/fair representation claim

As the district court noted, Suter has brought a hybrid § 301/fair representation claim against the LPO and the Local and the AFM. In such an action the plaintiff must allege and prove two intertwined claims: The suit against the employer rests on § 301 of the Labor Management Relations Act, 1947, codified as 29 U.S.C. § 185, and the suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 888 (5th Cir. 2004). A hybrid § 301/fair representation "action may be brought against either the employer, the union, or both; regardless, both elements must be proven" for the action to succeed. *Gibson*, 380 F.3d at 889 (citing *Thomas v. LTV Corp.*, 39 F.3d 611, 621 (5th Cir. 1994)). *See also DelCostello*, 462 U.S. at 164–65 (noting that the two claims are "inextricably interdependent") (internal quotations omitted). A failing in either of these claims is fatal to the entire hybrid § 301/fair representation action.

We first consider Suter's contention that the LPO breached the CBA. The district court determined that the CBA did not provide for a grievance and arbitration procedure for Suter's discharge. On appeal, Suter asserts that grievance procedures did form part of the CBA. According to Suter, binding procedures can be drawn from two sources: (1) the bylaws of the Local and the AFM and (2) the LPO Operating Rules. For different reasons, neither of these sources supply the

CBA with grievance and arbitration procedures for Suter's discharge. Therefore, Suter's CBA-breach claim fails.

**(1)    The Local and the AFM bylaws**

Suter's complaint, as it relates to the alleged breach of the CBA, contains allegations that the CBA incorporates the bylaws of the Local and the AFM. The plain language of the CBA supports this contention and the defendants do not dispute it. But that does not end the inquiry. As the incorporated rules are union bylaws, the union's "interpretation of its own governing documents should be accorded deference 'unless it is patently unreasonable.'" *O'Neill v. Airline Pilots Ass'n, Int'l*, 939 F.2d 1199, 1206 (5th Cir. 1991) (quoting *Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir. 1986)). The AFM concluded that the Local did not have jurisdiction to hear Suter's grievance under any provision of the AFM's bylaws.

Article 5, section 37(a) of the AFM bylaws provides: "In representing members of symphonic orchestras . . . for the purposes of collective bargaining with their employers, Locals shall provide, at no additional expense to the members involved, . . . continuing contract administration, including the handling of grievances and arbitration. . . ." Interpreting its bylaws, the AFM determined that no provision in the union bylaws supplied authority for the Local to adjudicate Suter's grievance. The Local and the AFM read the bylaw provision as merely directing local AFM affiliates to provide grievance arbitration services without charging additional fees in the event that a particular CBA contemplates a grievance arbitration procedure. Because the current CBA lacks a specific grievance arbitration provision, the Local and the AFM contend that the union bylaws do not impose the missing procedure.

Suter argues, but not beyond mere assertion, that the AFM's interpretation is unreasonable.

Suter suggests that the union bylaws provide mandatory arbitration of disputes related to the administration of LPO contracts.[4] But the existence of a plausible alternative does not render the union's interpretation unreasonable. Suter's construction is troubling for several reasons. First, the Local would be required to conduct an arbitration for a violation of a personal services contract, not the CBA. Second, the AFM can amend its own bylaws. Under Suter's theory, the AFM could, by unilateral action, alter the CBA, which forms the relationship between the union and the LPO, without the LPO's consent. Third, the presence of grievance provisions in earlier CBA versions suggests that the later removal of those provisions was intended to have some effect. Any one of these reasons supports the AFM's interpretation of their bylaws as not imposing an obligation on the Local to hear personal-services contract-related grievances against the LPO.

**(2)    LPO Operating Rules**

On appeal, Suter places his emphasis on the LPO Operating Rules. These rules, as Suter points out, provide for the hearing of wrongful discharge claims by the Local: "Any claim of wrongful discharge of a tenured musician shall be processed by the Local under its bylaws." It may be correct that the discharge of musicians is addressed in the LPO Operating Rules, which make up the individual personal services contracts between the musicians and the LPO. But the LPO Operating Rules are not incorporated into the CBA. Because the LPO Operating Rules do not form part of the CBA, the LPO's failure, if any, to adhere to these rules is not relevant for the purposes

---

[4]Suter also references the Local's bylaws which (1) establish the composition of an arbitration panel, in the event that one is convened, and (2) set out procedures for the prosecution of disciplinary charges by union member against other union members for violations of union bylaws. Neither of these provisions confer authority on the Local to hear a grievance for a discharge by the LPO.

of Suter's claim that the LPO breached the CBA.[5]

Neither the union bylaws nor the LPO Operating Rules provide the CBA with mandatory grievance arbitration provisions. Therefore, Suter's contention that the LPO breached the CBA by refusing to participate in arbitration fails. As noted, Suter's hybrid § 301/fair representation claim depends on the viability of both the allegation that the employer breached the collective bargaining agreement and the allegation that the union breached its duty of fair representation. *See DelCostello*, 462 U.S. at 165; *Gibson*, 380 F.3d at 888–89. Accordingly, Suter's claim against the Local and the AFM must also fail.[6]

## B.    Supplemental jurisdiction

After dismissing Suter's federal claims, the district court declined to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Such decisions are reviewed for abuse of discretion. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citing *Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999)).

Here the district court properly dismissed all federal claims against the defendants. The district court also noted that all parties to the suit are Louisiana citizens, that the non-federal claim was brought under Louisiana law, and that Suter previously had initiated suit over the same dispute

---

[5]The LPO contends that the LPO Operating Rules on which Suter relies are obsolete remnants of previous versions of the rules. Aside from holding that the rules are not incorporated into the CBA, we take no position on the validity of these rules.

[6]Because of our resolution of the CBA breach allegation, we do not address the district court's conclusion that the Local and the AFM did not have a duty of fair representation.

in Louisiana courts.  For these reasons, we hold that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the remaining state-law claim.

## IV.  CONCLUSION

Finding no error, we AFFIRM.