United States Court of Appeals
Fifth Circuit

**F I L E D**

August 3, 2007

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-60468

BEVERLY ENTERPRISES-MISSISSIPPI INC., doing business as Beverly
Healthcare-Eason,

Plaintiff-Appellant,

versus

BERTHA POWELL, Wrongful Death Beneficiary of Charles McAlister,
Deceased; JENNIFER PRUITT, Wrongful Death Beneficiary of Charles
McAlister, Deceased; KATHY BRUNSON; BRIDGET JONES; DARRYL KIRK;
CHARLES LAMONT MCALISTER; JUDY MCALISTER; LARRY MCALISTER; RUBY
MCALISTER; STEVE MCALISTER; ANTHONY GORDON; STEVAN (or Stephen)
MCALISTER,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi
(1:04-CV-276)

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Beverly Enterprises-Mississippi, Inc. challenges an adverse
summary judgment against its action to compel arbitration.
Material fact issues, however, preclude that judgment. **VACATED AND
REMANDED.**

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In January 2003, Charles McAlister (decedent) was admitted to Beverly Healthcare-Eason, a nursing-home facility, owned and operated by Beverly Enterprises-Mississippi, Inc. On the date of admission, decedent, who was illiterate, purportedly executed an arbitration agreement, which contained, *inter alia*, a provision requiring all claims or disputes raised in connection with his nursing-home care to be submitted to binding arbitration.

Decedent died at the Beverly facility in May 2003. In August 2004, Bertha Powell, decedent's sister and a wrongful death beneficiary, filed a state-court action, charging Beverly with, *inter alia,* negligence, medical malpractice, fraud, breach of fiduciary duty, and wrongful death.

In September 2004, Beverly filed this action against Powell and others (defendants) to compel arbitration and enjoin the state-court action. In response, defendants denied that the arbitration agreement was valid and enforceable. Following discovery, Beverly moved in August 2005 to compel arbitration. In February 2006, the district court denied Beverly's motion and closed its action, holding: testimony from Beverly's own witnesses suggest decedent was not read the arbitration document and did not sign it; and, due to decedent's illiteracy, Beverly engaged in fraud-in-the-inducement by having him sign the agreement without properly

explaining it to him.  Beverly's motion to alter or amend the judgment and for reconsideration was denied that April.

## II.

In essence, summary judgment was awarded defendants.  Beverly challenges that judgment, contending:  the arbitration agreement was valid and enforceable; and, accordingly, decedent's claims should be submitted to arbitration.  In the alternative, Beverly contends:  if questions of material fact exist as to the arbitration agreement's enforceability, this action should be remanded for trial.

A summary judgment is reviewed *de novo*, *e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986), and is appropriate "if ... there is no genuine issue as to any material fact and ... the mov[ant] ... is entitled to a judgment as a matter of law", FED. R. CIV. P. 56(c).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). "A fact issue is material if its resolution could affect the outcome of the action." *Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 454 (5th Cir. 2005) (quoting *Thompson v. Goetzmann*, 337 F.3d 489, 502 (5th Cir. 2003)).  Finally, all reasonable inferences are made in the light most favorable to the non-movant.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).

3

In determining whether parties should be compelled to arbitrate, courts perform a bifurcated inquiry. "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). In this regard, a party seeking to avoid arbitration must prove the arbitration provision was a product of fraud or coercion or other "such grounds [that] ... exist at law or in equity for the revocation of any contract". *Sam Reisfeld & Son Imp. Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (quoting the Federal Arbitration Act, 9 U.S.C. § 2); *see also* *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 332 (5th Cir. 1987). In contending that no valid arbitration agreement exists, and, therefore, in support of the summary judgment, defendants make two contentions.

First, they assert decedent did not agree to arbitrate any disputes because he did not sign the arbitration agreement. Decedent's family, although not present at his admission to the Beverly facility, testified the signature on the agreement (characterized by an "X" mark) is not his; the family produced other documentation which they claimed was signed by decedent and which purported to show a wholly different signature. In response, Beverly offers deposition testimony from two employees: one, who

4

witnessed decedent sign the agreement; and a second, who signed the agreement as a witness.  (Although the latter did not remember decedent's signing the agreement, she testified she would not have signed as witness had decedent not signed the agreement.)

In the alternative, defendants contend:  even if the agreement was signed, it is unconscionable, both procedurally and substantively.  Under Mississippi law, unconscionability can either be substantive or procedural.  *West v. West*, 891 So.2d 203, 213 (Miss. 2004).  For procedural unconscionability, parties invoking it point to the "formation of the contract", *id.*; unconscionability generally requires showing lack of either knowledge or voluntariness.  *Vicksburg Partners, L.P. v. Stephens*, 911 So.2d 507, 517 (Miss. 2005) (citation omitted).

Defendants assert the circumstances surrounding the agreement's formation rendered it procedurally unconscionable: decedent was illiterate and totally dependent on Beverly employees; and the employees did not read or explain the agreement to him, but simply paraphrased it.  As a related claim, defendants contend, and the district court found, that these actions amounted to fraud-in-the-inducement, by which Beverly took advantage of both its relationship with decedent and his illiteracy by failing to inform him that he was signing an arbitration agreement.  Beverly employees, however, present at decedent's admission, testified by deposition that the agreement was explained to him; and that he

5

understood the contents of the agreement when he executed it. Further, Beverly notes: under Mississippi law, "illiteracy alone is not a sufficient basis for the invalidation of an arbitration agreement". ***Am. Heritage Life Ins. Co. v. Lang***, 321 F.3d 533, 537 (5th Cir. 2003).

Needless to say, the contentions by both sides demonstrate this matter is not easily resolved. Indeed, the district court noted as much, stating: "there is conflicting testimony, from [each party's witnesses], as to whether [decedent] was read the Agreement and whether he placed an X on it". The resolution of these fact issues will undoubtably affect the disposition of this action. (Because material fact issues exist, we need not address defendant's claims for substantive unconscionability and breach of fiduciary duty.) Therefore, summary judgment was improper.

### III.

For the foregoing reasons, the denial of arbitration is **VACATED** and the matter is **REMANDED** for trial.

***VACATED AND REMANDED***

6