# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40748
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
March 21, 2016

Lyle W. Cayce
Clerk

LARRY GRESHAM,

      Plaintiff - Appellant

v.

WELLS FARGO BANK, N.A.,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-711

Before HIGGINBOTHAM, ELROD and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Appellant Larry Gresham defaulted on his loans from Appellee Wells Fargo Bank in 2010. In January 2011, Gresham filed suit in a Texas state court to prevent foreclosure upon property securing the debt, claiming wrongful acceleration, breach of contract, and negligence. The state court granted summary judgment to Wells Fargo in May 2013, and the bank reinstituted foreclosure proceedings. Two months later, Gresham sued Wells Fargo's foreclosure counsel, later adding the bank, which removed the case to federal

---

\* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-40748

court. Gresham then filed an Emergency Application for a Temporary Restraining Order. Upon its denial, Wells Fargo foreclosed. Gresham amended his complaint, and Wells Fargo responded with a motions to Dismiss and for Summary Judgment, which the district court granted. Gresham appealed. We affirm, persuaded that Gresham has failed to state a claim upon which relief may be granted.

## I.

We turn first to Gresham's Motion for Leave to File Second Amended Complaint. In determining whether to grant the request to leave to amend, a district court may consider five factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by prior amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[1] We review for abuse of discretion.[2]

The court focused on two of these factors. First, it concluded that granting the motion would cause undue delay. The motion itself was untimely under the Court's Scheduling Order. Gresham had already amended his complaint twice, and he did not show good cause or otherwise attempt to explain his tardiness in seeking to amend again. Meanwhile, Gresham had not made a payment on his mortgage in over four years, and this suit had been pending for over a year. The court reasonably found that another amendment would cause undue delay.

Second, the court determined that the amendment would be futile. Gresham sought to add the same causes of action as the previous complaint; specifically, that Wells Fargo failed to provide the required pre-foreclosure

---

[1] *Smith v. EMC Corp.*, 393 F.3d 590, 593 (5th Cir. 2004).

[2] *Sigaran v. U.S. Bank Nat. Ass'n*, 560 Fed. Appx. 410, 412 (5th Cir. 2014) (citing *Priester v. JP Morgan Chase Bank, N.A.,* 708 F.3d 667, 672 (5th Cir.2013)).

notice.[3] Such an amendment would be futile, the court concluded, because it had already held that the Wells Fargo gave Gresham proper notice of default.

For these reasons, the district court did not abuse its discretion is denying Gresham's Motion for Leave to File Second Amended Complaint.

## II.

Gresham also appeals the district court's grant of Wells Fargo's Motion to Dismiss and Motion for Summary Judgment.[4] Specifically, Gresham appeals the court's dismissal with prejudice of his claims that (1) Wells Fargo trespassed on his property by having his home insurance canceled and his electricity turned off and (2) that Wells Fargo violated Consumer Finance Protection Bureau ("CFPB") rules.[5] To avoid dismissal under Rule 12(b)(6), "a

---

[3] Gresham argues that the claim he sought to add dealt with a "separate and distinct" notice from the notice that the district court had already found to be sufficient. But he also concedes that Wells Fargo was aware of the claim he sought to add because he had raised it earlier in an Emergency Application for a Temporary Restraining Order against foreclosure in late March, 2014. A Magistrate Judge considered that Emergency Application and determined that the service of the requisite pre-foreclosure notices was sufficient, a finding which the district court adopted. The district court therefore did not abuse its discretion in determining that it had already considered the claim Gresham wanted to add.

[4] Gresham objects to Wells Fargo's reference to materials outside the pleadings. In its motion for summary judgment, Wells Fargo mentioned the state court proceedings between the parties, including referring to its own earlier detailed recitation of facts from its motion for summary judgment in state court. Gresham argues that these facts are conclusory and irrelevant, having nothing to do with the present proceedings because they predate the most recent foreclosure proceedings. We disagree. The factual and procedural background of the conflict between Gresham and Wells Fargo is of course relevant. Further, the district court based its 12(b)(6) ruling on the insufficiency of the facts plead by Gresham; even if Wells Fargo's reference to documents outside the pleadings was in error, it did not impact the district court's ruling.

While Gresham bases his objection on the relevance of those materials, not on the legal validity of referencing them in a 12(b)(6) motion, we note that such court documents are matters of public record and may be considered in connection with a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *See Coleman v. Bank of New York Mellon*, No. 3:12-CV-04783-MBH, 2013 WL 4761111, at *8 (N.D. Tex. Sept. 4, 2013) (quoting *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir.2007)) ("It is also 'clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'").

[5] The district court also ruled in favor of Wells Fargo regarding Gresham's Motion to Compel Mediation and Stay Proceedings as well as the *lis pendens* over the property in

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] We review *de novo*.[7]

## A.

We begin with Gresham's claim of trespass to real property. He alleges that Wells Fargo had his homeowner's insurance and electrical utilities cancelled on the day of the foreclosure sale. The district court concluded that, even if true, Gresham's allegations did not support a claim for trespass. We agree.

In order to state a plausible claim for trespass to real property, Gresham must establish the following elements: (1) the Gresham owned or had a lawful right to possess real property, (2) the Wells Fargo entered the Gresham's land (or intentionally caused a third person to enter), and the entry was physical, intentional, and voluntary, and (3) the Wells Fargo's trespass caused injury to the Gresham's right of possession.[8] Gresham's claim fails to establish these elements. First, he did not plead any facts indicating that Wells Fargo physically entered nor caused another to physically enter his property.[9] Without physical entry, there is no trespass. Second, Gresham had no legally cognizable interest in the property at the time of the alleged trespass. Under

---

question. Because Gresham did not raise these issues in his briefing, they are waived. *See Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 835 (5th Cir. 2011).

[6] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[7] *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 206 (5th Cir. 2009).

[8] *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied).

[9] Gresham points to *Cargal v. Cargal,* 750 S.W.2d 382, 385 (Tex. App.—Fort Worth 1988, no writ) for the proposition that interference with utilities can support a trespass to real property claim. However, *Cargal* is distinguishable from the facts at hand. In *Cargal*, the defendant stated that "he was locking the door . . . and turning off the utilities" immediately. *Id.* Thus, the claim involving utilities was coupled with physical entry – locking the door – and thereby deprived the Gresham of physical use of the property. There are no such allegations in this case.

No. 15-40748

Texas law, a borrower becomes a tenant at sufferance following a foreclosure.[10] A tenant at sufferance has neither legal interest nor insurable interest in the property.[11] For these reasons, the district court properly found that Gresham failed to state a plausible claim for trespass.

**B.**

Gresham also appeals the district court's dismissal of his claim that Wells Fargo violated CFPB rules concerning residential mortgages. These rules are codified in 12 C.F.R. §§1024, *et seq.*, and became effective on January 10, 2014. Here, it is undisputed that Gresham defaulted in 2010, and that Wells Fargo's November 2013 foreclosure proceeding was initiated before the CFPB rules became effective. The CFPB regulations do not apply retroactively.[12] Nonetheless, Gresham argues that Wells Fargo was required to comply with the regulations between their effective date, January 10, 2014, and the date of foreclosure, April 1, 2014.

Specifically, Gresham claims that Wells Fargo violated the regulations with respect to "dual tracking" at 12 C.F.R. § 1024.41 and "early intervention" at 12 C.F.R. § 1024.39. Dual tracking is the term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options.[13] Section 1024.41(g) prohibits dual tracking, and 1024.41(a) expressly provides for a private right of action in the event the lender violates the provision.[14] However, Section 1024.41(g) only

---

[10] *See Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 660 (Tex. App.—Texarkana 2013, no pet.) (finding that the borrower's status is reduced to a tenant at sufferance following foreclosure sale); *see also Jones v. Texas Pac. Indem. Co.*, 853 S.W.2d 791, 795 (Tex. App.—Dallas 1993, no writ) (finding that the plaintiffs "became tenants at sufferance after the foreclosure").

[11] *See Jones*, 853 S.W.2d at 795; *Rhine*, 411 S.W.3d at 661.

[12] *See Ray v. U.S. Bank Nat. Ass'n*, No. 15-1241, 2015 WL 5670841, at *4 (6th Cir. Sept. 28, 2015).

[13] *See* 12 C.F.R. § 1024.41.

[14] *Id.*

applies where "a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale."[15] Here, Gresham did not plead, nor is there any evidence, that he submitted a complete loss mitigation application more than 37 days before the April 1, 2014 foreclosure sale. The district court therefore correctly concluded that Gresham failed to put forth any factual content to support its claim that Wells Fargo violated dual tracking rules.

Gresham has similarly failed to state a claim in regards to Section 1024.39, which reads

> (a) Live contact. A servicer shall establish or make good faith efforts to establish live contact with a delinquent borrower not later than the 36th day of the borrower's delinquency and, promptly after establishing live contact, inform such borrower about the availability of loss mitigation options if appropriate.

> (b) Written notice.
> (1) Notice required. Except as otherwise provided in this section, a servicer shall provide to a delinquent borrower a written notice with the information set forth in paragraph (b)(2) of this section not later than the 45th day of the borrower's delinquency.

Gresham claims that Wells Fargo did not properly give him notice of his delinquency and loss mitigation options under this section. Unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers.[16] Even it did, Gresham failed to plead sufficient facts or offer any evidence in support of such claim. As the district court concluded, nothing in this section requires a servicer to retrace these steps on the basis of a

---

[15] 12 C.F.R. § 1024.41(c).

[16] At least one court has held that 12 C.F.R. § 1024.35, which incorporates violations of § 1024.39, does not provide a private right of action for damages. *See Miller v. HSBC Bank U.S.A., N.A.,* No. 13 CIV. 7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb.11, 2015). Because Gresham has failed to support his claim with any facts, we need not reach the issue of whether a private right of action could be available under Section 1024.39.

borrower's continued delinquency. The court therefore did not err in dismissing Gresham's claims under the CFPB rules.

    We AFFIRM.