# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20507

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2018

Lyle W. Cayce
Clerk

S. JAY WILLIAMS, individually and as assignee of WNC Institutional Tax Credit Fund VII, L.P., WNC Housing, L.P., and Tracy Kennedy; SCII-GP, L.L.C., as assignee of Shelter Resource Corporation, Swis Investments, Limited, and SC-GP, Incorporated; SWIS INVESTMENTS, LIMITED; SWIS COMMUNITY, LIMITED,

> Plaintiffs–Appellants,

v.

WELLS FARGO BANK, N.A., doing business through its operating division Wells Fargo Commercial Mortgage Servicing; FANNIE MAE, also known as Federal National Mortgage Association; DAVID F. STAAS; MARK GLANOWSKI; COURTNEY DAVIS BRISTOW; WINSTEAD, P.C.,

> Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:

S. Jay Williams, SCII-GP, L.L.C., Swis Investments, Limited, and Swis Community, Limited (the "Williams Parties") appeal the dismissal of their breach of contract claim. We affirm in part, reverse in part, and remand.

No. 16-20507

I

Williams formed Swis Community, Limited, which constructed a low-income housing project. Swis Community's general partner was Swis Investments, Limited, which was owned and controlled by Williams and W. Tracy Kennedy. Swis Community's special limited partner was WNC Housing, Limited Partnership. Swis Investments and WNC Housing each had a 0.01% interest in Swis Community. Swis Community's limited partner was WNC Institutional Tax Credit Fund VII, Limited Partnership (WNC Fund), which owned 99.98% of the partnership interest. WNC Fund's general partner was WNC & Associates (WNC) which held a 0.01% interest, and its limited partner was Key Investment Fund Limited Partnership X (Key Fund), which had a 99.99% interest in WNC Fund. Fannie Mae held a 99.90% interest in Key Fund, giving it a 99.87% interest in Swis Community.

Arbor National Commercial Mortgage, L.L.C. ("Arbor") financed the project through a loan to Swis Community secured by a Deed of Trust. Arbor later assigned the note and Deed of Trust to Fannie Mae, and Wells Fargo Bank, N.A. ("Wells Fargo") ultimately became the loan servicer. Swis Community earned low income housing tax credits as a result of the project. These credits were then allocated to Swis Community's investors.

After making payments on the loan for approximately a decade, Swis Community defaulted in November 2010 and made no further payments for five consecutive months. Fannie Mae elected to accelerate the note and institute non-judicial foreclosure proceedings pursuant to the Deed of Trust. Attorneys from Winstead, P.C. were appointed as substitute trustees. Upon request from one of the trustees for the "Borrower's, Key Principals' and Equity Investor's addresses," a Wells Fargo employee provided the addresses from the Deed of Trust for Williams, Kennedy, and WNC Fund. Notices were sent to Williams and Swis Community at the address provided for Williams in the

Deed of Trust.  Notices were also sent to Swis Investments, WNC Fund, and Kennedy at their respective addresses.  For some years Wells Fargo had treated the address for Williams as outdated and had been sending all correspondence to a different address.  As a result, the notices of acceleration and foreclosure were sent to the wrong addresses and were not received by Swis Community, Williams, or Swis Investments.  The parties dispute whether WNC received notice.  The record shows that Kennedy did receive notice, though at a different address than the one listed on the original certified mail form, and the Williams Parties do not present contrary evidence in their briefing.  The foreclosure sale proceeded, and Fannie Mae purchased the property.  It then deeded the project to another corporation.  As a result of the foreclosure, $1,207,617 in low income housing tax credits previously earned on the project were "recaptured" by the IRS.  Fannie Mae repaid approximately $1,206,049, an amount that corresponded to its interest in the Swis Community project, to the IRS for the recaptured tax credits.

Litigation ensued between the parties associated with Swis Community and WNC, which resulted in the assignment of WNC's and Kennedy's claims against Fannie Mae to Williams.  The Williams Parties brought suit against Fannie Mae and Wells Fargo, seeking to recover the value of the recaptured tax credits and corresponding interest totaling approximately $1.7 million.  The Williams Parties asserted claims against the defendants for breach of contract premised on a violation of the notice terms in the Deed of Trust, violations of the Texas Property Code, and wrongful foreclosure.  They also asserted a claim for breach of fiduciary duty against the substitute trustees.  The case was removed to federal court, and the district court declined to remand it.  The defendants moved for summary judgment, asserting jointly that the notice was not improper, that the Williams Parties had not suffered recoverable damages for their wrongful foreclosure claim, and even if

recoverable, those damages were primarily suffered by Fannie Mae. The defendants also asserted that the Williams Parties had no viable claim under the Texas Property Code. Wells Fargo filed a separate motion for summary judgment on the basis that it owed no contractual duty to the Williams Parties because it was not a party to the Deed of Trust.

The Williams Parties filed a motion for partial summary judgment on their claims premised on the alleged violation of the Texas Property Code and for breach of contract premised on the Deed of Trust. The district court granted the motion for partial summary judgment in favor of the Williams Parties on the breach of contract claim and dismissed the remaining claims with prejudice. However, on a motion for reconsideration, the district court dismissed the breach of contract claim against both Fannie Mae and Wells Fargo, concluding that, having defaulted on the Deed of Trust, the Williams Parties could not maintain a cause of action based on the breach of that agreement.[1] The court based its decision on this court's opinion in *Villarreal v. Wells Fargo Bank, N.A.*[2] In the same order, the district court granted Wells Fargo's independent motion for summary judgment. The district court also dismissed the breach of fiduciary duty claim against the trustees. The Williams Parties appeal the dismissal of their breach of contract claims against Fannie Mae and the grant of summary judgment in favor of Wells Fargo. They do not appeal the dismissal of the breach of fiduciary duty claim against the substitute trustees.

---

[1] *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (approving of the dismissal of a breach of contract claim made by a party to the contract who failed to plead facts supporting her own performance under the contract because "a party to a contract who is . . . in default cannot maintain a suit for its breach" (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam))).

[2] *Id.*

No. 16-20507

## II

The district court did not err in holding that Wells Fargo is not liable for breach of the Deed of Trust. The competent summary judgment evidence reflects that Wells Fargo was never a party to or an assignee of the Deed of Trust. The original Deed of Trust was entered into between Swis Community and the trustee, for the benefit of Arbor. Arbor then assigned the note and Deed of Trust to Fannie Mae. Wells Fargo was the loan servicer at the time of default, but once Fannie Mae was notified of default, Fannie Mae became the loan servicer. Fannie Mae then became the primary point of contact for Swis Community. Because the only claim on appeal is for breach of contract based on the Deed of Trust, and Wells Fargo was never a party to the Deed of Trust, Wells Fargo has no liability. Summary judgment in favor of Wells Fargo was appropriate.

## III

As an initial matter, the Williams Parties contend that the district court should not have granted Fannie Mae's motion for reconsideration of its ruling that Fannie Mae had breached the deed of trust by failing to send notices to the correct addresses, contending that a motion for reconsideration is not a proper vehicle for asserting new arguments. We review a district court's grant of a motion for reconsideration for abuse of discretion.[3]

Fannie Mae's affirmative defense of prior material breach was not raised in response to the Williams Parties' motion for summary judgment, and the Williams Parties motion for summary judgment did not squarely address it. Fannie Mae's motion for reconsideration framed the issue as a failure to allege facts supporting an element of the Williams Parties' claim for breach of

---

[3] *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993) (reviewing a district court's grant of a motion for reconsideration for abuse of discretion).

No. 16-20507

contract, and the Williams Parties did not object to this characterization in their response. Nor did they raise the exceptions to the prior material breach defense they now present on appeal. The Williams Parties objected to the motion for reconsideration primarily on the grounds that *Villarreal* did not apply and that the defendants failed to raise new facts or legal arguments not previously presented. However, a court has broad discretion in these matters, and we cannot conclude that it was an abuse of discretion for the district court to grant the motion for reconsideration to consider the applicability of *Villarreal* to this case.[4]

With regard to the merits of the claim that Fannie Mae breached the deed of trust, under Texas law, such a claim is a breach of contract claim.[5] The essential elements are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach."[6] Fannie Mae asserts that the Williams Parties cannot maintain a suit for breach of contract because they have not alleged facts supporting their own performance under the contract, and therefore fail to satisfy the second element of their breach of contract claim as a matter of law. We review the district court's grant of summary judgment de novo.

---

[4] *See id.* (reviewing a district court's grant of a motion for reconsideration for abuse of discretion).

[5] *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 95-96 (Tex. App.—Eastland 2010, pet. denied) (considering a breach of contract claim, which the plaintiff based on a purported breach of a deed of trust).

[6] *Id.* at 99; *accord MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex. App.—San Antonio 2005, no pet.); *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

No. 16-20507

Based on our court's opinion in *Villarreal v. Wells Fargo Bank, N.A.*,[7] which applied the principle from *Dobbins v. Redden*[8] that "a party to a contract who is . . . in default cannot maintain a suit for its breach," [9] the district court concluded that the Williams Parties' breach of contract claim was unsustainable. The obligor in *Villarreal* defaulted on a promissory note.[10] Wells Fargo, the noteholder, did not send the notice of default, notice of intent to accelerate, and notice of acceleration to the plaintiff's new residence. Instead, it sent them to the address listed in the Deed of Trust, and to a residence associated with a prior obligor on the note.[11] Wells Fargo foreclosed on the property.[12] The obligor sued, alleging breach of contract, among other claims.[13] This court concluded that the obligor "failed to allege any facts showing her own performance and did not refute the facts in documents referred to in her complaint" that showed she was in default.[14] The opinion purported to apply the rule of Texas law stated in *Dobbins*, that "a party to a contract who is [herself] in default cannot maintain a suit for its breach."[15] We held that the obligor's unrefuted default on the note precluded her suit under the Deed of Trust.[16]

The Williams Parties contend that the rule from *Dobbins* is subject to several exceptions under Texas law that were not raised and therefore were not considered in *Villareal*. One of these exceptions is that a party's default

---

[7] 814 F.3d 763.

[8] 785 S.W. 2d 377, 378 (Tex. 1990).

[9] *Id.* at 767 (quoting *Dobbins*, 785 S.W. 2d at 378).

[10] *Id.* at 766.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 767.

[15] *Id.*; *see Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990).

[16] *Villarreal*, 814 F.3d at 767.

under a contract will only excuse the other party's performance of the contract's terms that are dependent upon the promises that the defaulting party failed to perform.[17]  For example, in *Giblin v. Sudduth*, a buyer of property also obtained a five-year option to purchase an adjoining tract by agreeing to pay $10 in rent each year.[18]  The Texas court of appeals held that the purchaser's failure to pay the rent did not excuse the seller's obligation to sell the adjoining tract to the purchaser.[19]

This principle of Texas law was not presented to our court by any of the parties in *Villareal*, and therefore, our court did not consider it.  We are therefore free to consider in this case whether an exception to the general proposition set forth in *Dobbins* exists in the context of a debt secured by a deed of trust covering real property.  We conclude that Fannie Mae's agreement in the deed of trust to give notice of foreclosure was independent of the Williams Parties' agreement under the note to pay monthly installments to satisfy the debt.  The obligation to give notice of foreclosure would not even arise unless and until the Williams Parties were in default under the note.

At least two Texas courts of appeals have held that a claim for breach of a deed of trust for failure to serve notice of foreclosure exists as a stand-alone cause of action, apart from a claim for wrongful foreclosure.[20]  In *Sauceda*, the lender sent two letters informing the debtors that the mortgage on their home

---

[17] *See Hanks v. GAB Bus. Servs.*, 644 S.W.2d 707, 708 (Tex. 1982) ("A prerequisite to the remedy of excuse of performance is that covenants in a contract must be mutually dependent promises"); *Chambers v. Hunt Petrol. Corp.*, 320 S.W.3d 578, (Tex. App.—Tyler 2010); *Giblin v. Sudduth*, 300 S.W.2d 330 (Tex. Civ. App.—Austin 1957, writ ref'd n.r.e.); *see also Green Intern, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (quoting *Hanks*, 644 S.W.2d at 708).

[18] *Giblin*, 300 S.W.2d at 332.

[19] *Id.* at 334.

[20] *See Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135 (Tex. App.—Corpus Christi 2008); *Jacaman v. Nationstar Mortg., LLC*, 2018 WL 842975 (Tex. App.—San Antonio Feb. 14, 2018, no pet. h.).

was in default for failure to make monthly payments.[21]  However, an additional written notice required by the deed of trust was not given.[22]  The Texas court held that the state district court had erred in granting summary judgment in favor of the lender on the debtors' breach-of-the-deed-of-trust claim.[23]  Another court of appeals, in an unpublished and therefore non-precedential opinion, reached the same conclusion when presented with similar facts in *Jacaman*.[24] Neither court considered whether the fact that the debtors were in default should excuse performance of the obligation to give notice of foreclosure, or conversely, whether the promise to give notice of foreclosure was independent of the obligation to make monthly payments.  But it is unremarkable that such a discussion was absent.

As alluded above, the requirement in a deed of trust that there be notice of intent to foreclose only has meaning if it can be enforced in the event of default.  Texas courts "must . . . attempt to give effect to all contract provisions so that none will be rendered meaningless."[25]  If performance of the terms of a deed of trust governing the parties' rights and obligations in the event of default can always be excused by pointing to the debtor's default under the terms of the note, the notice terms have no meaning.  Such a reading is inconsistent with the intent of the parties and with Texas law.

However, we express no opinion as to the ultimate outcome of this case. There are a number of issues either not briefed or not adequately briefed in this appeal.  They include whether loss of tax credits is an appropriate component of a damage claim for failure to give notice of foreclosure as required under a deed of trust, and whether the failure to give notice, as distinguished

---

[21] 268 S.W.3d at 140.

[22] *Id.*

[23] *Id.*

[24] *Jacaman*, 2018 WL 842975 at *7-8.

[25] *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

from the default on the loan, or a foreclosure that was not wrongful, caused the loss of tax credits.

*     *     *

For the foregoing reasons, we AFFIRM the district court's judgment as to Wells Fargo, we REVERSE the judgment of the district court as to the claim that Fannie Mae breached the deed of trust by failing to give notice, and we REMAND that claim against Fannie Mae for further proceedings in the district court.