# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2021

Lyle W. Cayce
Clerk

No. 20-11236

WALTER YOUNG,

*Plaintiff—Appellant*,

*versus*

SELECT PORTFOLIO SERVICING, INCORPORATED; U.S. BANK, N.A., AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE J.P.MORGAN MORTGAGE ACQUISITION CORP. 2005-WMC1 ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WMC1; TRANS AM SFE II, L.L.C.,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-717

Before STEWART, HAYNES, and GRAVES, *Circuit Judges*.

PER CURIAM:*

Plaintiff-Appellant Walter Young fell behind on his mortgage payments to his mortgagee, Defendant-Appellee U.S. Bank. Young's loan

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-11236

servicer, Defendant-Appellee Select Portfolio Servicing, Inc. ("SPS"), approved him for a trial loan modification that, if accepted, would require him to timely make reduced payments for three months. Young says he accepted the trial plan and complied with its terms, but U.S. Bank nonetheless foreclosed and sold his home to Defendant-Appellee Trans Am SFE II, LLC. Allegedly, Young did not learn of that sale until two months after it occurred—when Trans Am sought to evict him. Young sued U.S. Bank and SPS for breach of contract, to set aside the foreclosure sale, and for violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA") and the Texas Debt Collection Act ("TDCA"). He also sued Trans Am, asserting claims to quiet title and for trespass to try title. Defendants each moved for summary judgment, which the district court granted, consistent with the magistrate judge's recommendation. Young appeals.

For the reasons that follow, we AFFIRM.

## I. Facts & Procedural Background

In June 2005, Young executed two mortgages to purchase a home in Cedar Hill, Texas, where he still lives. Through a series of assignments, U.S. Bank became the noteholder for the first mortgage. Young paid off his second mortgage in 2014. But in November 2015, after falling behind on his first mortgage, Young applied to SPS for a loan modification. SPS approved Young for a "Trial Modification Plan." The approval letter explained that Young had until December 1, 2015, to accept the offer. It further advised that the "plan will be considered accepted if you make the first payment due according to the attached payment schedule." The payment schedule listed three payment dates—December 1, 2015; January 1, 2016; and February 1, 2016—that, if met, would convert the Trial Modification Plan into a permanent modification to Young's mortgage. The "Plan Acceptance" section of the letter provided that, "[t]o accept the Plan, you must make your

No. 20-11236

First Payment by [December 1, 2015]. The Plan will become active only if SPS receives the First Payment by the scheduled date of your First Payment under the Plan." The "Plan Payments" section of the letter warned Young that if he did not "make each of the [three] payments by or before the listed due dates," SPS would cancel the plan.

Young says he accepted SPS's offer by mailing the first payment on November 27, 2015. Allegedly, Young also timely made the second and third payments. SPS's loan records show, however, that SPS did not receive Young's first payment by the deadline, December 1, 2015. The loan records also reflect that SPS notified Young on January 4, 2016, that "his assistance request was considered withdrawn due to his failure to" timely accept its offer. That notice also explained that Young had 30 days to appeal the decision. Two days later, SPS informed Young that he had defaulted on his mortgage and that he had one month to either cure or face acceleration. Young says he did not receive any of this correspondence.

In August 2016, SPS informed Young that it had accelerated his loan and planned to auction his home at a foreclosure sale on October 4, 2016. That sale was purportedly postponed the day of, however, and SPS sent Young another acceleration notice on October 11, 2016, which rescheduled the foreclosure sale for November 1, 2016. On October 14, 2016, U.S. Bank, through its substitute trustee, executed a "Recission of Noticed Substitute Trustee's Sale." Despite the purported postponement of the October sale, the Recission Notice explained that the substitute trustee sold Young's home on October 4, 2016. But because the substitute trustee's deed could not be recorded, the sale was rescinded. Under the Recission Notice, U.S. Bank stipulated that (i) "all acts conducted with regard to the October 4, 2016 Foreclosure Sale of the Property are hereby rescinded"; (ii) the purchaser, U.S. Bank, and Young are "returned to the status quo existing immediately prior to the foreclosure proceedings on October 4, 2016"; and (iii) "the Note

No. 20-11236

and Deed of Trust are reinstated subject to the amount in arrears and total amount due, and are acknowledged as valid and enforceable in accordance with their original tenor and effect." SPS sent Young a copy of the Recission Notice on October 17, 2016. The Recission Notice was recorded the next day.

On November 1, 2016, consistent with the October 11 acceleration and foreclosure notice, the substitute trustee sold Young's home to Trans Am. Trans Am moved to evict Young in January 2017. Young attests that he did not learn of the November foreclosure sale until he found Trans Am's eviction notice attached to his door.

Young sued Defendants in state court, asserting claims for breach of contract, to set aside the foreclosure sale, to quiet title, and for RESPA and TDCA violations. Defendants timely removed based on federal question jurisdiction. The district court referred the case to the magistrate judge for pretrial management. Defendants each moved for summary judgment. In considering the motions, the magistrate judge distilled Young's claims into the following "three central allegations":

> (1) that Plaintiff accepted the Trial Plan and timely made the three required monthly payments;
>
> (2) that Defendants abandoned acceleration of the loan payments by virtue of the Rescission Notice; and
>
> (3) that Plaintiff did not receive the required notices prior to the November Sale.

Because record evidence refuted each allegation, the magistrate judge recommended granting summary judgment. Over objections, the district court accepted that recommendation and dismissed Young's claims with prejudice. After the district court denied Young's motion to reconsider, Young timely appealed.

No. 20-11236

## II. Standard of Review

This court reviews orders granting summary judgment de novo. *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282 (5th Cir. 2019) "Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 282–83 (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (citation and quotation omitted). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). However, the court "must view the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick*, 901 F.3d at 611 (quoting *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008)).

## III. Discussion

Young challenges the district court's dismissal of his claims under federal and Texas law, alleging that he proffered enough evidence to overcome summary judgment and that the district court misapplied the law. We address his arguments below.

### (A) Young's RESPA claim

Young asserts a claim against SPS and U.S. Bank for violating RESPA, 12 U.S.C. § 2601 *et seq.*, which Congress enacted to "protect consumers from . . . abusive mortgage practices." *Moreno v. Summit Mortg. Corp.*, 364 F.3d 574, 576 (5th Cir. 2004). Allegedly, SPS and U.S. Bank engaged in "dual tracking," a practice that RESPA prohibits through its enforcing regulations.

No. 20-11236

Dual tracking occurs when "the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016). "Federal regulations restrict a mortgage servicer's ability to engage in dual tracking." *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 319 n.4 (5th Cir. 2015) (citing 12 C.F.R. § 1024.41). Under § 1024.41(g), lenders cannot foreclose if the "borrower submits a complete loss mitigation application after a servicer has made the first [default] notice or filing . . . but more than 37 days before a foreclosure sale."[1] 12 C.F.R. § 1024.41(g). Section 1024.41(g) contains an exception, however, for instances where "[t]he borrower fails to perform under an agreement on a loss mitigation option." *Id.* § 1024.41(g)(3). If a loan servicer denies a borrower for "any trial or permanent loan modification option," it must notify the borrower in writing and provide specific reasons for the denial. *Id.* § 1024.41(d). The loan servicer must also provide the borrower with an opportunity to appeal. *Id.* § 1024.41(h)(1). Finally, § 1024.41(a) provides a private right of action for the borrower to sue in federal court when the lender engages in dual tracking. *Gresham*, 642 F. App'x at 359.

Young alleges that after he purportedly accepted the Trial Modification Plan, SPS and U.S. Bank violated § 1024.41(d) by failing to give him written notice that they had denied him a permanent modification. He continues that SPS and U.S. Bank failed to give him an opportunity to appeal the denial, as § 1024.41(h) requires. Thus, when SPS and U.S. Bank initiated foreclosure proceedings while the Trial Modification Plan purportedly

---

[1] "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

remained active, they allegedly dual tracked Young's loan in violation of § 1024.41(g).

The district court granted summary judgment on this claim. Although the parties disputed whether Young accepted the Trial Modification Plan by timely making the December payment, the district court found that issue immaterial.[2] The district court instead focused on whether Young timely made the second payment, finding that he did not. That was because Young conceded that "he mailed the payment due by January 1, 2016 on December 31, 2015, and SPS did not receive it until January 5." Young thus violated the Trial Modification Plan by failing to timely make his second payment. For that reason, the district court concluded that SPS and U.S. Bank neither "denied" Young a loan modification or appeal, nor engaged in dual tracking in violation of RESPA.

On appeal, Young argues that the district court erroneously concluded that the Trial Modification Plan required him to ensure that SPS received his January payment by the due date. Although Young concedes that the Trial Modification Plan made his acceptance contingent on SPS's timely receipt of the December payment, he asserts that the agreement's "plain language" required that he "make" (*read*: mail) his subsequent payments by the due date. Young says the contract was at least ambiguous as to when SPS needed to receive his subsequent payments, so the district court erroneously granted summary judgment. In response, SPS and U.S. Bank contend that Young's interpretation of the Trial Modification Plan distorts the agreement and that, even accepting Young's interpretation, this claim fails because Young did not

---

[2] Because the district court accepted the findings, conclusions, and recommendations of the magistrate judge, we refer to the magistrate judge's findings as if issued by the district court.

timely make all of the requisite payments.[3] Trans Am adds that summary judgment was proper because SPS never received Young's first payment by the due date. Young does not reply to any of these arguments.

The district court correctly concluded that because SPS and U.S. Bank did not deny Young a loan modification or appeal, they did not unlawfully dual track his loan. To begin with, the Trial Modification Plan is not ambiguous regarding when Young's payments were due. "A contract provision is ambiguous only where the terms are susceptible to differing reasonable interpretations." *Hughes Training Inc. v. Cook*, 254 F.3d 588, 593 (5th Cir. 2001) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987)). To be sure, the "Plan Acceptance" section of the Trial Modification Plan stated that the plan would activate "only if SPS receive[d] the First Payment by the scheduled date" whereas the "Plan Payments" section merely required Young to "make each of the below-listed payments by or before the listed due dates." But the "below-listed payments" referenced in the Plan Payments section included the December payment that, if timely received, triggered acceptance. Young's interpretation of the Trial Modification Plan would thus impose different payment procedures for the first and subsequent payments although the agreement lists them together and does not otherwise distinguish them. Because that interpretation is unreasonable, the Trial Modification Plan is not ambiguous.

Language contained in the approval letter accompanying the Trial Modification Plan supports that conclusion. As Young acknowledges, the approval letter explained that the "plan will be considered accepted if you *make* the first payment due according to the attached payment schedule."

---

[3] Trans Am referentially incorporates SPS and U.S. Bank's arguments on this and most other issues.

Because the approval letter stated that Young had to timely "make" the December payment, which indisputably required SPS's timely receipt of that payment, it is unreasonable to conclude that the Trial Modification Plan's use of "make" means "send" or "mail," as Young suggests. For this additional reason, we agree that the Trial Modification Plan was unambiguous, and the district court correctly considered whether SPS received Young's second payment after the due date.

But even if this part of the Trial Modification Plan were ambiguous, that would not warrant reversal because record evidence establishes that Young never accepted the Trial Modification Plan. Although the district court declined to consider whether Young accepted the Trial Modification Plan by timely making the December payment, this court "can affirm the district court's grant of summary judgment on any ground supported by the record." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Young attested that he sent his first payment, due on December 1, 2015, to SPS on November 27, 2015. He supported his statement with a copy of the money order receipt he obtained for the first payment. However, unrebutted evidence establishes that SPS did not receive Young's first payment by the deadline. Accordingly, summary judgment was appropriate because Young did not timely accept the Trial Modification Plan.

At bottom, SPS and U.S. Bank did not engage in dual tracking because SPS never denied Young a loan modification. Instead, SPS offered Young a Trial Modification Plan, which Young failed to accept or comply with. SPS thus had no obligation to notify Young of any denial. And to the extent it had such a duty, SPS notified Young that "his assistance request was considered withdrawn due to his failure to" timely accept its offer and advised Young that he had 30 days to appeal. We therefore agree with the district court's grant of summary judgment on Young's RESPA claim.

*(B) Young's claims under Texas law*

Young also sued SPS and U.S. Bank under Texas law for breach of contract, to set aside the foreclosure sale, and for TDCA violations. He sued Trans Am to quiet title and for trespass to try title. The district court considered these claims together because they all concern Young's "contentions that (1) the rescission of the October Sale 'unequivocally abandoned the acceleration' of the payments due and reinstated the terms of the loan anew; and (2) as a result, he was not given the required legal notices prior to the November Sale." The district court found both assertions inconsistent with the record evidence and therefore granted summary judgment.

As the district court observed, each of Young's remaining claims assume that the Recission Notice abandoned the acceleration of his loan and U.S. Bank therefore unlawfully foreclosed. Young bases his breach of contract claim, for example, on alleged violations of the Deed of Trust.[4] Allegedly, SPS and U.S. Bank "breached the Deed of Trust by failing to provide the required notices of default and intent to accelerate and opportunity to cure, notice of acceleration and right of reinstatement, and notice of trustee's sale." Young concedes that SPS and U.S. Bank timely notified him of (1) his default and risk of loan acceleration, (2) his ultimate loan acceleration, (3) the October foreclosure sale, and (4) the November foreclosure sale. Yet he maintains that those notices were invalid as to the November foreclosure sale because U.S. Bank allegedly abandoned its

---

[4] The elements of a breach of contract claim under Texas law are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (quoting *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied)).

acceleration of his loan when it executed the Recission Notice. The upshot, Young contends, is that SPS and U.S. Bank should have provided him additional notice.

Young has not raised a genuine issue of material fact as to whether, by executing the Recission Notice, SPS and U.S. Bank abandoned the acceleration of his loan. "The acceleration of a note can be abandoned 'by agreement or other action of the parties.'" *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting *Khan v. GBAK Props.*, 371 S.W.3d 347, 353 (Tex. Ct. App. 2012)). But as Defendants point out, the parties did not agree to abandon the acceleration, and the Recission Notice was not an "other action" constituting abandonment. In *Boren*, for example, this court held that a lender can unilaterally abandon an acceleration by notifying "the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms." 807 F.3d at 105. There, the abandonment took the form of a second notice of default informing the plaintiffs that, despite the lender's previous acceleration of the loan, the plaintiffs could either cure their arrearage or face acceleration. *Id.* at 106. "This notice unequivocally manifested an intent to abandon the previous acceleration[.]" *Id.*

The Recission Notice here, in contrast, was not unequivocal. Although Young cites language from the Recission Notice stipulating that the October sale was rescinded, the parties were returned to the status quo existing before the October  sale, and the Note and Deed of Trust were reinstated, this language does not help him. First, as the district court recognized, U.S. Bank only "request[ed] recission of the October 4, 2016 sale[.]" Per its plain language, the Recission Notice did not purport to affect the acceleration of Young's loan or the then-upcoming November foreclosure sale.

11

Second, Young says the district court erroneously failed to address his argument that the Recission Notice abandoned the acceleration by returning the parties to "the status quo" existing immediately before the October foreclosure sale. But to the contrary, the district court expressly rejected that argument, noting that "immediately prior to the October Sale, Plaintiff's loan was accelerated." SPS and U.S. Bank first gave Young notice of his loan's acceleration on August 29, 2016. At the same time, they informed him that his home would be sold on October 4, 2016. But after that sale was postponed, SPS and U.S. Bank sent Young a second acceleration notice on October 11, 2016. That notice was nearly identical to the first, except it rescheduled the foreclosure sale to November 1, 2016. Young does not argue that the subsequent acceleration notice nullified the earlier one. So, assuming arguendo the Recission Notice's reference to the status quo existing before the October sale affected the second acceleration notice, the first acceleration notice remained in effect.

Finally, Young emphasizes language from the Recission Notice stating that "the Note and Deed of Trust are reinstated." But this language also noted that the reinstatement was "subject to the amount in arrears and total amount due," which does not manifest an intent to either disavow collection or allow Young to cure. *See Boren*, 807 F.3d at 105. For these reasons, Young's argument that the Recission Notice abandoned the acceleration is meritless. So too is his contention that he lacked notice of the November foreclosure sale, which Young admits is also based on his assumption that "the acceleration was abandoned." Because the acceleration remained in effect despite the Recission Notice and Young was therefore not entitled to additional notice, Young's breach of contract claim fails.

Young's other claims are similarly deficient. For starters, Young says SPS and U.S. Bank violated the TDCA, codified at Texas Finance Code

§ 392.001 *et seq.*[5] On appeal, Young limits this claim to alleged violations of §§ 392.301(a)(8) and 392.304(a)(8). Section 392.301(a)(8) bars debt collectors from using "threats, coercion, or attempts to coerce that" involve "threatening to take an action prohibited by law." TEX. FIN. CODE ANN. § 392.301(a)(8). Section 392.304(a)(8) prohibits debt collectors from making "a fraudulent, deceptive, or misleading representation that" misrepresents "the character, extent, or amount of a consumer debt, or misrepresent[s] the consumer debt's status in a judicial or governmental proceeding[.]" *Id.* § 392.304(a)(8).

Young claims SPS and U.S. Bank violated § 392.301(a)(8) by unlawfully conducting the November foreclosure sale. He again asserts that SPS and U.S. Bank dual tracked his loan, rendering the November foreclosure sale invalid. Similarly, Youngs says SPS and U.S. Bank violated § 392.304(a)(8) by dual tracking his loan and by selling his home at the November foreclosure sale despite allegedly rescinding his acceleration and reinstating his loan. These arguments are unavailing. As discussed above, SPS and U.S. Bank did not dual track Young's loan, and Young proffers no evidence raising a genuine issue of material fact as to whether the Recission Notice rescinded the acceleration. Summary judgment was thus appropriate as to Young's TDCA claim.

The district court also properly granted summary judgment on Young's claims to set aside the foreclosure sale against SPS and U.S. Bank and to quiet title against Trans Am. As an initial matter, a cause of action to

---

[5] "The elements of a TDCA claim are: (1) the debt is consumer debt; (2) the defendant is a debt collector, as defined by the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act." *Putty v. Fed. Nat'l Mortg. Ass'n*, No. 3:16-CV-2562-D, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017) (quotation omitted), *aff'd*, 736 F. App'x 484 (5th Cir. 2018).

set aside a foreclosure sale arises only if the foreclosure was improper or wrongful. *See UMLIC VP LLC v. T & M Sales & Env't Sys., Inc.*, 176 S.W.3d 595, 610 (Tex. App. 2005); *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593 (Tex. App. 2012). Young alleged a claim for wrongful foreclosure, but he voluntarily dismissed it at summary judgment. He therefore lacks a cause of action to have the foreclosure sale set aside. But even if Young had not dismissed his claim for wrongful foreclosure, that claim (and the underlying cause of action to set aside the foreclosure sale) would fail because he has not proffered evidence of either "a defect in the foreclosure sale proceedings" or "a grossly inadequate selling price," which are among the elements for such a claim. *Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 406 (5th Cir. 2017) (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. 2008)).

Similarly, Young's claim for quiet title against Trans Am fails because he has not shown that Trans Am's title "is invalid or unenforceable," as that claim requires. *Lassberg v. Bank of Am., N.A.*, 660 F. App'x 262, 269 (5th Cir. 2016) (quoting *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01–10–00837–CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.)). We therefore agree with the district court's grant of summary judgment on all of Young's claims under Texas law.

## V. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.